Timothy S. BURNS

v.

BLAIR COUNTY, Pennsylvania; Terry Tomassetti, Diane L. Meling and Ted Beam, Jr., in Their Capacities as Commissioners of Blair County, Pennsylvania; Office of the Sheriff for Blair County, Pennsylvania; Mitchell Cooper a/k/a Mitch Cooper, in his Capacity as Sheriff of Blair County, Pennsylvania; The Prison Board for Blair County, Pennsylvania; Hon. Daniel J. Milliron, Judge of the Court of Common Pleas of Blair County, Pennsylvania, Richard Consiglio, District Attorney for Blair County, Pennsylvania, Terry Tomassetti, Diane L. Meling and Ted Beam, Jr., Commissioners for Blair County, Pennsylvania, Richard J. Peo, Controller for Blair County, Pennsylvania, and Mitchell Cooper a/k/a Mitch Cooper, Sheriff of Blair County, Pennsylvania, All in Their Capacities as Members of The Prison Board for Blair County, Pennsylvania, David Jacobs, Chris Rosenberry and Holly Garner, in Their Capacities as Deputy Sheriffs for Blair County, Pennsylvania; Office of the District Attorney of Blair County, Pennsylvania; and Richard A. Consiglio, in his Capacity as District Attorney for Blair County, Pennsylvania.

Appeal of: Blair County, Pennsylvania; Terry Tomassetti, Diane L. Meling and Ted Beam, Jr., in Their Capacities as Commissioners of Blair County, Pennsylvania; Office of the Sheriff for Blair County, Pennsylvania; Mitchell Cooper a/k/a Mitch Cooper, in his Capacity as Sheriff of Blair County, Pennsylvania; The Prison Board for Blair County, Pennsylvania; Richard J. Peo, Controller for Blair County, Pennsylvania, and Mitchell Cooper a/k/a Mitch Cooper, Sheriff of Blair County, Pennsylvania, All in Their Capacities as Members of The Prison Board for Blair County, Pennsylvania, David Jacobs, Chris Rosenberry and Holly Garner, in Their Capacities as Deputy Sheriffs for Blair County, Pennsylvania; Office of the District Attorney of Blair County, Pennsylvania.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2014.
Decided March 31, 2015.

Louis C. Long, Pittsburgh, for appellants.

Robert P. Petyak, Ebensburg, for appellee.

BEFORE: BERNARD L. McGINLEY, Judge, and MARY HANNAH LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge McGINLEY.

Blair County, Pennsylvania; Terry Tomassetti, Diane L. Meling and Ted Beam, Jr., in their capacities as Commissioners of Blair County, Pennsylvania; Office of the Sheriff for Blair County, Pennsylvania; Mitchell Cooper a/k/a Mitch Cooper, in his Capacity as Sheriff of Blair County, Pennsylvania (Sheriff Cooper); the Prison Board for Blair County, Pennsylvania; Richard J. Peo, Controller for Blair County, Pennsylvania, and Mitchell Cooper a/k/a Mitch Cooper, Sheriff of Blair County, Pennsylvania, all in their capacities as members of the Prison Board for Blair County, Pennsylvania, David Jacobs, Chris Rosenberry and Holly Garner, in Their Capacities as Deputy Sheriffs for Blair County, Pennsylvania; and the Office of the District Attorney of Blair County, Pennsylvania (collectively, Appellants) appeal the order of the Court of Common Pleas of Blair County (common pleas court) that denied their preliminary objec-

tions to the complaint of Timothy S. Burns (Burns).

■ The common pleas court appointed Burns to represent Andre Staton (Staton) in his Post–Conviction Relief Act, 42 Pa. C.S. §§ 9541–9546, proceedings. Staton was convicted of first degree homicide and was sentenced to death in the stabbing death of his paramour. On February 21, 2012, our Pennsylvania Supreme Court affirmed Staton's conviction and death sentence. On May 3, 2012, Staton filed a timely Post Conviction Relief Act petition and raised a number of issues of ineffectiveness of counsel as well as errors on the part of the Court.

On August 16, 2012, Governor Corbett signed Staton's death warrant and scheduled the execution for October 10, 2012. On August 18, 2012, the common pleas court granted a stay of execution for Staton which Burns had filed the previous day.

On May 13, 2013, Burns and Staton presented a motion for recusal of the common pleas court judge on the basis that her continued role in the matter presented the appearance of bias and/or prejudice because she was the judge who granted the original Protection From Abuse Order against Staton and also ruled on pre-trial suppression hearings prior to his homicide trial. The common pleas court denied the recusal motion. At that same time, the common pleas court heard oral argument from Staton who wanted to have Burns removed as counsel. Burns opposed the request and did not believe that Staton could competently represent himself. Burns referred to our Pennsylvania Supreme Court's decision in *Commonwealth v. Staton*, 608 Pa. 404, 12 A.3d 277 (2010), where the Supreme Court denied Staton's request to have his ninth court-appointed counsel removed during the direct appellate phase of his case.

During the argument, Burns and Staton were sitting next to each other at counsel table with Burns to the left of Staton. There were three Blair County Deputy Sheriffs in the courtroom, though they were not in close proximity to Staton. Staton's hands were handcuffed in front of him, there was a restraining belt to which he was shackled, and there were no electronic restraining devices. The common pleas court denied Staton's request to have Burns removed as counsel. Staton then began berating the common pleas court, Burns, and the Commonwealth. Staton demanded that Blair County District Attorney Richard Consiglio execute him right then by lethal injection. Staton continued his tirade for several minutes and stood up at counsel table.

Burns has alleged in his complaint that the following sequence of events took place:

38. Andre Staton concluded his unrestrained verbal tirade, and while standing at counsel table next to Plaintiff, Timothy S. Burns, Andre Staton folded his hands together and turned to his left, swinging his closed fists at the face of Plaintiff, Timothy S. Burns, and violently struck the Plaintiff, Timothy S. Burns, in the face with Andre Staton's handcuffs and fists.

39. The force of Andre Staton's blow to Plaintiff, Timothy S. Burns' face and head was so powerful that it left an imprint of Andre Staton's handcuffs on Plaintiff, Timothy S. Burns['s] face, and knocked Plaintiff, Timothy S. Burns, out of his chair and onto the floor, breaking the chair in the process, as well as causing the Plaintiff, Timothy S. Burns, to momentarily lose consciousness.

40. Upon hitting the floor, and regaining consciousness, Plaintiff, Timothy S.

Burns, was dazed in pain, and had problems seeing out of his left eye.

41. The Plaintiff, Timothy S. Burns, was subsequently transported to Altoona Area Hospital for treatment.

42. Plaintiff, Timothy S. Burns, was discharged from the Altoona Area Hospital the same day; however, within 48 hours, Plaintiff Timothy S. Burns, developed symptoms of a traumatic brain injury or a severe concussion.

43. On May 15, 2013, Plaintiff, Timothy S. Burns, was transported by ambulance from his law office in Ebensburg, Pennsylvania, to Conemaugh Memorial Hospital in Johnstown, Pennsylvania, due to complications from the aforesaid head injury.

Complaint, November 8, 2013, (Complaint), Paragraph Nos. 38–43 at 7; Reproduced Record (R.R.) at 10a.

Burns alleged that he suffered the following injuries as a result of Staton's attack:

Concussion, brief loss of consciousness, periods of extreme depression with preoccupation related to this assault; intrusive head discomfort; periods of being extremely distraught, significant loss of confidence in himself and his abilities; repeated overwhelming panic attacks, with reported recurrent thoughts of self-harm; post-traumatic stress disorder reaction; acute ST elevation myocardial infarction, followed by cardiac catheterization; intermittent dizziness; intermittent balance distortions; concentration impersistence; difficulty mentally tracking conversational speech; slowed information processing; forgetfulness; and sleep disturbance (characterized as difficulty maintaining sleep); post-concussion headache that was initially accompanied by vomiting; elements of recall process (verbal and non verbal) below age expected limits variable ability to

sustain mental focus appeared to be a contributing factor; head discomfort; muscle tension; aggravation of pre-existing conditions; high levels of fear, guilt, disgust and perceived helplessness, as well as shame and humiliation; clinically significant levels of post-traumatic dissociation; high levels of symptom re-experience suggesting Plaintiff, Timothy S. Burns, is undergoing significant posttraumatic stress. Plaintiff, Timothy S. Burns, suffered multiple bruises and contusions in and about the head resulting in injury and/or aggravation of pre-existing conditions thereof, and he did in particular, but without limitation, sustain concussion syndrome and severe emotional stress, some of which or all of which injuries are or may be permanent in nature. He is regularly bothered by intrusive recollections of the traumatic events and feels unable to control those re-experiencing symptoms. This level of endorsement is often accompanied by attempts to avoid environmental events that might trigger more re-experiencing, some combination of tension, irritability and tendency to be jumpy or 'on edge', persistent hyper arousal symptoms that are experienced as very aversive and distressing; post-traumatic stress disorder, the severity of this disorder is estimated to be in the severe range. In addition, Plaintiff, Timothy S. Burns, suffers clinically meaningful levels of a more 'complex' post traumatic disorder. This more complicated clinical picture often requires more extended or intense psychological and/or pharmacological treatment.

Complaint, Paragraph No. 58 at 13–14; R.R. at 16a–17a.

In addition, Burns claimed that he suffered cognitive problems, injuries to his back, neck, head, shoulders, and legs, vi-

sion problems, and a variety of other physical and mental problems.

In Count One of the Complaint, Burns alleged that Blair County, Terry Tomassetti, Diane L. Meling, and Ted Beam, Jr., in their capacities as commissioners for Blair County and as members of the Prison Board for Blair County, acted negligently when they failed to take special precautions or have policies in place regarding the transportation of Staton; when they failed to have adequate restraints on Staton in and outside Courtroom No. 2 of the Blair County Courthouse; when they failed to provide adequate courtroom security, protection, and safety for Burns inside the bar of the Courtroom; when they failed to keep the premises in a safe condition for the use of business/public invitees and people to whom a special duty of care and protection was undertaken and owed; when they failed to provide adequate security, safety, and protection owed to Burns by virtue of his representation of Staton; when they failed to monitor the area inside the bar of Courtroom No. 2 adequately and did not provide the necessary protection of Burns; when they failed to handcuff Staton's hands behind him during the proceeding; when they failed to have the deputy sheriffs for Blair County properly restrain Staton in shackles and/or chains, and/or failed to properly apply restraining devices; and/or failed to stay in close enough physical proximity to Staton to ensure the safety of Burns; when they failed to hire, employ, or retain sufficient personnel to supervise Burns's safety; when they failed to follow the minimal requirements applicable to security as set forth in the standards and written policies of the Commissioners for Blair County and/or the Prison Board for Blair County; and when they failed to provide adequate security for the transportation of Staton.

Also, in Count One of the Complaint, Burns alleged that the Blair County Sheriff Deputies, David Jacobs, Chris Rosenberry and Holly Garner, under the supervision of Sheriff Cooper, were negligent in that they failed to follow the Prison Board of Blair County's written and/or oral safety/security policies and procedures, and the deputies were not in close proximity to Staton in the courtroom and failed to provide adequate courtroom security. Burns alleged that the negligence of the deputies made Courtroom No. 2, which was government-owned real property, unsafe for the activities for which it was and is regularly used, for which it was intended to be used, or for which it was reasonably foreseen to be used.

Burns also alleged in Count One of the Complaint that Richard Consiglio, the district attorney of Blair County and Sheriff Cooper and his deputies' failure to adequately protect Burns in the courtroom constituted care, custody, or control and/or possession of "real property requiring special precautions in the courtroom, and created and constituted under 42 Pa.C.S ... § 8542(b)(3), an exception to any immunity provided under the Pennsylvania Political Subdivision Tort Claims Act." Complaint, Paragraph No. 93(r) at 35; R.R. at 38a.

Burns also alleged that Sheriff Cooper and the deputies failed to follow and adhere to Sheriff Cooper's own verbal and/or written policies with respect to security for prisoner transportation, courtroom security, and protection for Burns as well to similar procedures of the Blair County Commissioners and the Blair County Prison Board.

Burns further alleged that the Prison Board of Blair County failed to provide the minimum requirements applicable to secu-

rity with respect to inmate transportation. Burns also alleged that all of the defendants named in the complaint abandoned necessary safety and security measures to put Burns in jeopardy and negligently supervised Staton which created a dangerous condition for Burns. He also alleged that Sheriff Cooper was negligent for not obtaining proper training regarding courtroom security and failed to adequately warn Burns to protect himself against the harm that resulted.

In Count Two of the Complaint, Burns alleged that Sheriff Cooper was negligent in that he failed to obtain or attempt to obtain training in the duties of a sheriff or of a deputy sheriff proper to supervising the deputy sheriffs. The allegations of negligence were fairly similar to those in Count One in that they addressed the Sheriff's failure to provide adequate security in the courtroom for Burns when he represented Staton.

In Count Three of the Complaint, Burns alleged that the Prison Board of Blair County, the Honorable Daniel J. Milliron, judge of the Court of Common Pleas of Blair County, Richard Consiglio, district attorney for Blair County, Terry Tomassetti, Diane L. Meling and Ted Beam, Jr., the Commissioners for Blair County, Richard J. Peo, the controller for Blair County and Sheriff Cooper essentially committed the same acts of negligence set forth in the other two counts.

In Count Four of the Complaint, Burns alleged that David Jacobs, Chris Rosenberry, and Holly Garner in their capacities as deputy sheriffs for Blair County negligently failed to provide adequate security in the courtroom for Burns. Some of the allegations were the same as those raised in other counts of the complaint. Burns also focused on the alleged failure to adequately restrain Staton and protect Burns.

In Count Five of the Complaint, Burns alleged that the Office of the District Attorney for Blair County, and Richard Consiglio, in his capacity as District Attorney of Blair County and in his capacity as a member of the Prison Board of Blair County committed the same acts of negligence recited in the earlier counts. For each count Burns sought damages in excess of $50,000.00.

On January 6, 2014, the Appellants preliminarily objected to the Complaint in the nature of a demurrer and sought its dismissal:

4. The moving Defendants are local agencies and/or officials and/or employees of local agencies within the meaning of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. ... § 8541 et seq. (PSTCA). Local agencies and their officials and employees are afforded immunity from claims for damages arising out of injury to persons and/or property unless the claims arise out of negligent conduct with respect to one of eight enumerated exceptions set forth in the PSTCA.

5. Plaintiff's [Burns] claims do not come within the 'real property exception' as is specifically alleged in the Complaint.

6. In order for the real property exception to apply, Plaintiff [Burns] must show that he was injured as a result of a defect or the physical characteristics of real property within the possession, custody or control of Moving Defendants.

7. The allegations of Plaintiff's [Burns] Complaint establish that Plaintiff's [Burns] injury was caused by a third party and not a defect of property owned, possessed or controlled by Blair County.

8. The Pennsylvania Courts have specifically held that negligence in the care custody or control of real property, in-

cluding allegations of inadequate security and negligent supervision is insufficient to state a claim which comes within the real property exception where such negligence merely facilitates the act of a third party.

9. All of the allegations of Plaintiff's [Burns] Complaint relate to a failure to prevent a third party from causing the Plaintiff's [Burns] injuries and further establish that the Plaintiff's [Burns] injuries were caused by an assault and battery committed by a third party.

10. Plaintiff [Burns] does not allege that his claims implicate any exception to immunity other than the real property exception. Moreover, the Complaint cannot reasonably be construed as alleging negligent conduct falling within any of the other exceptions.

11. Although Plaintiff [Burns] alleges that he had a special relationship with the Moving Defendants as court-appointed defense counsel giving rise to . . . a particular duty to protect Plaintiff [Burns], Plaintiff's [Burns] claims still fail as he cannot show that they come within one of the exceptions to immunity under the PSTCA.

12. As Plaintiff's [Burns] allegations do not implicate any of the exceptions to immunity under the PSTCA, Moving Defendants are immune from Plaintiff's [Burns] claims.

Preliminary Objections, January 6, 2014, Paragraph Nos. 4–12 at 5–6; R.R. at 99a–100a.

By order dated February 26, 2014, the common pleas court overruled the preliminary objections.[1] Following the Appellants' motion to amend the order to permit a certified interlocutory appeal, the common pleas court amended the February 26, 2014, order to include the following statements: "(1) the Order involves a controlling question of law concerning the 'real property exception' to governmental immunity, 42 Pa.C.S. . . . § 8542(b)(3); (2) there exist substantial grounds for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the matter." Order, March 21, 2014, at 1; R.R. at 103a.[2]

■ The Appellants contend that an attack by a criminal defendant in the custody of a local government agency, which occurs on property controlled by the local government agency, does not fall within the real property exception to government immunity.[3]

As a result, the Appellants assert that because local government parties are immune from liability for their failure to prevent the attack of Staton on Burns on government property, the common pleas court erred when it failed to sustain the

---

1. The common pleas court sustained preliminary objections of Daniel J. Milliron, Judge of the Court of Common Pleas of Blair County and in his capacity as a member of the Blair County Prison Board and of Richard A. Consiglio, Esquire as District Attorney of Blair County and in his capacity as a member of the Blair County Prison Board. The disposition of these preliminary objections is not before this Court on appeal.

2. The common pleas court did not issue an opinion in support of the order overruling preliminary objections.

3. This Court's review is to determine whether on the facts alleged the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa.Cmwlth. 243, 629 A.2d 270, 271 n. 3 (1993). This Court must accept as true all well pled allegations and material facts averred in the complaint as well as inferences reasonably deducible therefrom and any doubt should be resolved in favor of overruling the demurrer. *Id.*

preliminary objections and dismiss the Appellants.

Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541, provides that "(e)xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."

Section 8542 of the Judicial Code, 42 Pa.C.S. § 8542, provides in pertinent part:

**(a) Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, 'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

**(b) Acts which may impose liability.**— The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(3) *Real Property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, 'real property' shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

In *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), our Pennsylvania Supreme Court addressed the applicability of the real property exception to governmental immunity. Claude Opher (Opher) was a detainee at the Philadelphia Youth Study Center (Center), a detention center for juvenile criminal offenders. Opher escaped from the Center. While at large, Opher and an accomplice broke into a home owned by Michelle Mascaro (Mrs. Mascaro) and Kenneth Mascaro (Mr. Mascaro) (collectively, the Mascaros). While Opher and his accomplice were burglarizing the house, the Mascaros returned home. Opher and his accomplice tied up the Mascaros and their son, Kenneth, while the accomplice raped Mrs. Mascaro. Opher allegedly took the Mascaros' daughter, Michelle, to the Mascaros' bedroom where he raped and sodomized her for several hours. Opher was eventually tried and convicted and was sentenced to a term of fifty to one hundred fifty years. Mr. Mascaro was unable to live with his memory of the events and committed suicide. *Mascaro*, 523 A.2d at 1119.

Before the suicide, the Mascaros and their children commenced an action in the Court of Common Pleas of Philadelphia County against the Center, the City of Philadelphia (City), its then managing di-

rector Wilson Goode, and the Commonwealth of Pennsylvania (the appellees) and claimed that due to the negligent maintenance of the detention center, Opher was permitted to escape and injure the Mascaro family. In their answer the appellees denied the allegations of negligence. In new matter, the appellees invoked the affirmative defenses of governmental and official immunity and sought a judgment on the pleadings. The Court of Common Pleas of Philadelphia County agreed with the appellees and granted judgment on the pleadings. *Mascaro,* 523 A.2d at 1119–1120.

The Mascaros appealed to this Court which found Wilson Goode immune from suit but also held that the complaint stated a cause of action against the City and the Center under the real estate exception to governmental immunity. This Court reversed the Court of Common Pleas of Philadelphia County's entry of judgment on the pleadings and remanded the case to the Court of Common Pleas of Philadelphia County. *Mascaro,* 523 A.2d at 1120.

The City and the Center petitioned for allowance of appeal which our Pennsylvania Supreme Court granted to consider the application of the real estate exception and whether it barred an action against the City and the Center. *Mascaro,* 523 A.2d at 1120.

The Pennsylvania Supreme Court determined that the Mascaros met the first two requirements of the real estate exception in that the damages would be recoverable under common law if the actor did not have immunity protection and that the injuries were caused by the negligent acts of the government agency or an employee acting within the scope of his office. *Mascaro,* 523 A.2d at 1121–1123.

With respect to the third requirement that the real estate exception exposed the City and the Center to liability coextensive with the liability imposed on private landowners, our Pennsylvania Supreme Court reversed and determined:

> We agree that the real estate exception to governmental immunity is a narrow exception and, by its own terms, refers only to injuries arising out of the care, custody or control of the real property in the possession of the political subdivision or its employees. Acts of the local agency or its employees which make the property unsafe for the activities for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit. Acts of *others,* however, are specifically excluded in the immunity section ... and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees. This, of course, is a difference from the duties and liabilities of a private landowner who can be held accountable for the forseeable [sic] criminal conduct of others under *Ford v. Jeffries* [474 Pa. 588, 379 A.2d 111 (1977) ].
>
> The real estate exception, however, has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately. ...
>
> We believe those cases to have been decided correctly and they persuade us to hold that the *real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself caused the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.*
>
> *We believe the Legislature has clearly precluded the imposition of liability on itself or the local agencies for acts of*

*third parties by its language of § 8541 ... and that it has not seen fit to waive immunity for these actors or their acts in any of the eight exceptions.*

Such a legislative judgment is wholly within the province of the Legislature according to our current interpretation of sovereign and governmental immunity....

This is also consistent with the Legislative determination that the criminal acts, actual fraud, actual malice or willful misconduct of its *own* agency or employees acting within the scope of their duties are not the subject of suit or liability.... It would be incongruous, indeed, to shield the City or Center from liability for the crimes of its agents and employees, but impose liability for the crimes of others. We believe, given the legislative scheme of immunity, that the Act consistently excludes all criminal acts from liability, including the acts of criminals, such as Opher, who take advantage of defects in municipal property to commit their own crimes. (Citations omitted.) (Footnote omitted.) (Emphasis in original and added.)

*Mascaro,* 523 A.2d at 1123–1124.

*Mascaro* stands for a narrow application of the real estate exception, that the harm that others who are not government employees cause cannot be imputed to the local agency or its employees, the real estate exception can only be applied when an artificial condition or defect of the land causes the injury, and that the government unit is not liable for the criminal acts of others.

More recently, this Court applied *Mascaro* in *Williams v. Philadelphia Housing Authority,* 873 A.2d 81 (Pa.Cmwlth.2005). In *Williams,* Warren Anderson (Anderson) resided with his mother at the Martin Luther King Housing Project (Housing Project) in the City of Philadelphia (City).

Wanda Williams and her minor children, Jasmine Williams and Shante Williams, (the Williams) were visitors to the Housing Project. They were leaving the Housing Project when Anderson shot Jasmine Williams. According to the complaint later filed by the Williams, Anderson's residence at the Housing Project violated the rules of the Philadelphia Housing Authority (Authority) because Anderson had previous felony convictions and these convictions were known to both the Authority and the City. *Williams,* 873 A.2d at 83.

In the complaint, the Williams alleged that Anderson's presence at the Housing Project along with defective security devices such as malfunctioning security cameras, inoperative turnstiles, and an unmanned security booth caused the injury to Jasmine Williams. The Williams alleged that the City and the Authority negligently failed to provide security in the Housing Project. Both the City and the Authority preliminarily objected in the nature of a demurrer. Both the City and the Authority asserted that the criminal act of Anderson, a third party, was the superseding cause of Jasmine Williams's injuries and not the physical condition of the Housing Project and that the failure to police or supervise property did not fall within any exceptions to governmental or sovereign immunity. The Court of Common Pleas of Philadelphia County sustained both preliminary objections and dismissed the complaint with prejudice. The Williams appealed to this Court. *Williams,* 873 A.2d at 83–84.

Before this Court, the Williams contended that the Court of Common Pleas of Philadelphia County erred when it sustained the preliminary objections of the City because the presence of Anderson, the unmanned security booth, and the malfunctioning security camera were physical defects at the Housing Project that trig-

gered the real property exceptions contained at Section 8542(b)(3) of the Judicial Code, 42 Pa.C.S. § 8542(b)(3). *Williams,* 873 A.2d at 84.

This Court affirmed based on *Mascaro:*

The trial court correctly concluded that Williams did not allege facts to show that the shooting of Jasmine Williams resulted from a defect in the property; at best, the complaint averred that dangerous condition in the real property facilitated Anderson's criminal assault on her. The failure to maintain the security devices was superseded by Anderson's criminal assault on Jasmine Williams. . . . Accordingly, we hold that governmental immunity barred Williams' claim against the City. . . . . (Footnotes omitted.)

*Williams,* 873 A.2d at 87.

Here, Burns essentially alleged in the complaint that the negligence of various Blair County officials in failing to take proper security measures allowed a convicted murderer, Staton, to injure him. Burns did not establish that the injury was caused by a defect in the County property. Under *Mascaro,* the government entity is not liable for the criminal acts of others. As in *Williams,* any alleged failure to properly secure Staton was superseded by Staton's criminal assault on Burns. Following the precedents of *Mascaro* and *Williams,* this Court must determine that the common pleas court erred when it overruled the preliminary objections.

Accordingly, this Court reverses and remands to the common pleas court to sustain the preliminary objections and enter judgment in favor of the Appellants.

### ORDER

AND NOW, this 31st day of March, 2015, the order of the Court of Common Pleas of Blair County in the above-captioned matter is reversed and this case is remanded to the Court of Common Pleas of Blair County to sustain the preliminary objections and enter judgment in favor of Blair County, Pennsylvania; Terry Tomassetti, Diane L. Meling and Ted Beam, Jr., in their capacities as Commissioners of Blair County, Pennsylvania; Office of the Sheriff for Blair County, Pennsylvania; Mitchell Cooper a/k/a Mitch Cooper, in his Capacity as Sheriff of Blair County, Pennsylvania (Sheriff Cooper); the Prison Board for Blair County, Pennsylvania; Richard J. Peo, Controller for Blair County, Pennsylvania, and Mitchell Cooper a/k/a Mitch Cooper, Sheriff of Blair County, Pennsylvania, all in their capacities as members of the Prison Board for Blair County, Pennsylvania, David Jacobs, Chris Rosenberry and Holly Garner, in Their Capacities as Deputy Sheriffs for Blair County, Pennsylvania; and the Office of the District Attorney of Blair County, Pennsylvania. Jurisdiction relinquished.